**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MATTHEW HUFNUS, CHRISTOPHER LUDGATE, TONY SHAPIRO-BEY, and STEPHEN B. SMITH, and on behalf of themselves and all others similarly situated, | |
| *Plaintiffs*, | Case No.  21-cv-11130 |
| | CLASS ACTION COMPLAINT |
| v. | DEMAND FOR JURY TRIAL |
| KONINKELIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC; | |
| *Defendants.* | |

Plaintiffs Matthew Hufnus ("Plaintiff Hufnus"), Christopher Ludgate ("Plaintiff Lugate"), Tony Shapiro-Bey ("Plaintiff Shapiro-Bey"), Stephen B. Smith ("Plaintiff Smith")(collectively "Plaintiffs"), themselves and the class and subclasses of all others similarly situated as defined below, for their complaint against defendants Koninklijke Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), and Philips RS North America LLC ("Philips RS") (collectively, Royal Philips, Philips NA, and Philips RS are "Philips" or the "Defendants"), allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.

**<u>INTRODUCTION</u>**

1.      Plaintiffs bring this action on behalf of themselves and a proposed class and subclasses of purchasers of Philips Bi-Level Positive Airway Pressure ("BiPAP"), Continuous Positive Airway Pressure ("CPAP"), and mechanical ventilator devices, which contain polyester-based polyurethane ("PE-PUR") sound abatement foam ("PE-PUR Foam").

2.     On April 26, 2021, Philips disclosed it had determined that there were risks that the PE-PUR Foam used in certain devices manufactured by Philips may degrade under certain circumstances.  On June 14, 2021, Philips issued a recall of devices containing PE-PUR Foam, noting that Philips had determined that the PE-PUR Foam was at risk for degradation into particles which may enter the device's pathway and be ingested or inhaled by users of devices which contain PE-PUR Foam, as well as off-gassing certain chemicals.  Philips recommended that patients using Philips BiPAP and CPAP devices immediately discontinue their use of their devices.

3.     Plaintiffs all owned or leased Philips CPAP, BiPAP, or mechanical ventilator devices prior to June 14, 2021.  Plaintiffs subsequently learned that their CPAP, BiPAP, or mechanical ventilator devices had been recalled by Philips due to the presence of a dangerous PE-PUR Foam that could cause them to suffer from adverse health effects, including, *inter alia*, cancer.  Plaintiffs have been advised by Philips to discontinue use of their devices.  Plaintiffs must now spend a substantial amount of time and incur substantial expenses to replace the device.

4.     Plaintiffs seek to recover damages based on, *inter alia*, Philips' negligence, breach of contract, breach of express warranty, breach of implied warranties, and breaches of various state consumer protection laws in connection with its manufacture, marketing and sales of devices containing PE-PUR Foam on behalf of themselves and the proposed Class and Subclasses.

## PARTIES

5.     Plaintiff Matthew Hufnus is a citizen of the State of Illinois and a resident of Cook County, Illinois.

6.     Plaintiff Christopher Ludgate is a citizen of the State of New York and a resident of Queens County, New York.

7.     Plaintiff Tony Shapiro-Bey is a citizen of the State of New York and a resident of New York County, New York.  Prior to residing in the State of New York, Plaintiff Shapiro-Bey resided in Baltimore, Maryland.

8.     Plaintiff Stephen B. Smith is a citizen of the State of Indiana and a resident of Grant County, Indiana.

9.     Defendant Koninklijke Philips N.V. ("Royal Philips") is a Dutch multinational corporation with its principal place of business located in Amsterdam, Netherlands.  Royal Philips is the parent company of Philips NA and Philips RS.

10.     Defendant Philips North America LLC is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141.  Philips North America is a wholly-owned subsidiary of Koninklijke Philips N.V.  Upon information and belief, Philips NA manages the operation of Royal Philips' various lines of business, including Philips RS, in North America.

11.     Defendant Philips RS North America LLC ("Philips RS") is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15296.  Philips RS was formerly operated under the business name Respironics, Inc. ("Respironics").  Royal Philips acquired Respironics in 2008.[1]

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of

---

[1]     *Philips announces completion of tender offer to acquire Respironics*, WEB WIRE, https://www.webwire.com/ViewPressRel.asp?aId=61199 (accessed June 17, 2021).

the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiffs and most members of the proposed Classes are citizens of a state different from Defendants.

13.     Venue is proper in this judicial District pursuant to 28 U.S.C. §1391(b) and (c) and 18 U.S.C. §1965, because Defendants transact business in, are found in, and/or have agents in this District, and because some of the actions giving rise to this complaint took place within this District.

14.     The Court has personal jurisdiction over the Defendants.   Defendants have transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District.   The scheme and conspiracy have been directed at, and have had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

## **FACTUAL BACKGROUND**

### I.     **Continuous Positive Airway Pressure Therapy**

15.     Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical treatment primarily used to treat sleep apnea.  CPAP therapy typically involves the use of a nasal or facemask device, and a CPAP device helps individuals breathe by increasing the air pressure in an individual's throat.

16.     Sleep Apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout an individual's sleep cycle.  These interruptions, called "apneas," are caused when the soft tissue in an individual's airway collapses.  The airway collapse prevents oxygen from reaching the individual's lungs which can cause a buildup of carbon dioxide.  If the individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from

sleep so that the individual's airway can reopen. Often these interruptions are so brief that the individual will not remember. Despite the brevity of the interruptions, the sleep cycle disruption caused by sleep apnea can dramatically impact a person's lifestyle, including negatively impacting energy, mental performance, and long-term health. CPAP therapy helps treat sleep apnea by preventing the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing.

## II.    Bi-Level Positive Airway Pressure Therapy

17.    Bi-Level Positive Airway Pressure ("BiPAP") therapy is a common alternative to CPAP therapy for treating sleep apnea. Similar to CPAP therapy, BiPAP therapy is nonsurgical and involves the use of a nasal or facemask device to maintain air pressure in an individual's airway. BiPAP is distinguishable from CPAP therapy, however, because BiPAP devices deliver two alternating levels - inspiratory and expiratory - of pressurized air into a person's airway, rather than the single continuous level of pressurized air delivered by a CPAP device. The inspiratory positive airway pressure assists a person as a breath is taken in. Conversely, the expiratory positive airway pressure is applied to allow a person to comfortably breathe out. BiPAP devices deliver one level of pressurize air (the inspiratory positive level) to assist as a person inhales, and another level (the expiratory level) as a person exhales.

## III.    Mechanical Ventilation

18.    Mechanical ventilation is a treatment to help a person breathe when they find it difficult or are unable to breathe on their own. A mechanical ventilator pushes airflow into the patient's lungs to help them breathe. Mechanical ventilation may be invasive ventilation with a tube inserted into the patient's airway, performed in the intensive care unit in the hospital or a

long-term institutional setting. Non-invasive ventilation can be used at home by people with respiratory difficulties.

## SUBSTANTIVE ALLEGATIONS

19.    Philips developed, marketed, and sold a lineup of CPAP and BiPAP respirator devices under its "Sleep & Respiratory Care" portfolio designed to assist individuals with a number of sleep, breathing, and respiratory conditions, including sleep apnea. Philips' CPAP and BiPAP respirator devices typically cost several hundred, if not thousands of dollars. Philips has sold millions of these devices in the United States.

### IV.    Philips Sleep & Respiratory Care Devices Were Endangering its Users

20.    On April 26, 2021, as part of its Quarterly Report for Q1 2021, Philips disclosed for the first time, under a section entitled "Regulatory Update," that device user reports had led to a discovery that the type of PE-PUR "sound abatement" foam Philips used to minimize noise in several CPAP and BiPAP respirators posed health risks to its users. Specifically, Philips disclosed that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone[], and certain environmental conditions involving high humidity and temperature."[2]

21.    Over a month later, on June 14, 2021, Philips announced that it was recalling several models of BiPAP, CPAP, and mechanical ventilator devices "to address identified potential health risks related to the polyester-based polyurethane (PE-PUR) sound abatement foam component in these devices."[3] Specifically, Philips announced that it had determined that the "PE-

---

[2]    *First Quarter Results*, PHILIPS (Apr. 26 2021), https://www.results.philips.com/publications/q121/downloads/pdf/en/philips-first-quarter-results-2021-report.pdf (accessed June 16, 2021).

[3]    *Philips issues recall notification to mitigate potential health risks related to the sound abatement foam component in certain sleep and respiratory care devices*, PHILIPS (June 14, 2021), https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-

PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals."[4]  In total, Philips announced that "[b]etween 3 million and 4 million" devices are targeted in the recall.[5]

22.    The list of the devices recalled by Philips (the "Recalled Devices") include:

| Philips CPAP and BiLevel PAP Devices Subject to Recall[6] | |
|---|---|
| **Device Name/Model** | **Type** |
| Philips E30 (Emergency Use Authorization) | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips DreamStation ASV | Continuous Ventilator, Non-life Supporting |
| Philips DreamStation ST, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne ASV4 | Continuous Ventilator, Non-life Supporting |
| Philips C Series ASV, S/T, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips OmniLab Advanced Plus, In-Lab Titration Device | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne (Q Series) | Non-continuous Ventilator |
| Philips DreamStation, CPAP, Auto CPAP, BiPAP) | Non-continuous Ventilator |
| Philips DreamStation GO, CPAP, APAP | Non-continuous Ventilator |
| Philips Dorma 400, 500, CPAP | Non-continuous Ventilator |
| Philips REMStar SE Auto, CPAP | Non-continuous Ventilator |

---

recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 16, 2021).

4        *Id.*

5        Associated Press, *Philips recalls ventilators, sleep apnea machines due to health risks*, NBC NEWS, https://www.nbcnews.com/business/consumer/philips-recalls-ventilators-sleep-apnea-machines-due-health-risks-n1270725 (accessed June 16, 2021).

6        *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 16, 2021).

| Philips Mechanical Respirator Devices Subject to Recall[7] | |
| --- | --- |
| **Philips Device Name/Model** | **Type** |
| Philips Trilogy 100 Ventilator | Continuous Ventilator |
| Philips Trilogy 200 Ventilator | Continuous Ventilator |
| Philips Garbin Plus, Aeris, LifeVent Ventilator | Continuous Ventilator |
| Philips A-Series BiPAP Hybrid A30 | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP V30 Auto Ventilator | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP A40 | Continuous Ventilator, Non-life Supporting |
| Philips A-Series BiPAP A30 | Continuous Ventilator, Non-life Supporting |

23.    According to Philips, the PE-PUR Foam used in Recalled Devices puts Recalled Device users at risk of suffering from the following:  "Irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (e.g. kidneys and liver) and toxic carcinogenic affects."[8]  Philips further noted that it had received specific complaints from Recalled Devices users as suffering from "headache[s], upper airway irritation, cough, chest pressure and sinus infection."[9]

---

[7]    *Id.*

[8]    *Id.*

[9]    *Id.*

**V.     The Health Risks Associated with Use of the Recalled Devices Renders Them Worthless**

24.     As a result of the health risks associated with the use of the Recalled Devices, together with Defendants' concealment of these risks from the date they were first reported through April 26, 2021, the Recalled Devices have been rendered completely worthless or, at the very least, have been substantially diminished in value.

25.     The information described above, including the now-known health risks, the recall, and the medical advice issued by Philips, have rendered the Recalled Device worthless to patients with sleep and respiratory conditions.  Individuals not using life-supporting ventilators must discontinue their use of the Recalled Devices or face health risks as grave as cancer.  If they choose to discontinue use they must pay for another expensive device in order to receive effective treatment.  Individuals using life-supporting ventilators must seek out an alternative before discontinuing their use of the Recalled Devices.

26.     Recognizing this, Philips issued the following advice to patients using any of the Recalled Devices:

- "**For patients using BiLevel PAP and CPAP devices**:  Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."[10]

- "**For patients using life-sustaining mechanical ventilator devices: <u>DO NOT discontinue or alter prescribed therapy</u>, without consulting physicians to determine appropriate next steps.**"[11]

27.     As a result of the above, Plaintiffs and the Class will have to undertake considerable expense replacing the Recalled Devices.

---

[10]     *Id.* (emphasis in original).

[11]     *Id.* (emphasis in original).

## VI.   **Philips Unreasonably Delayed its Recall**

28.    Philips has not disclosed when it first received reports from users of its Sleep & Respiratory Care devices "regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)."[12]  However, given the fact that all Philips Respironics devices manufactured from 2009 to present have been recalled, it is unlikely that Defendants only recently learned of these issues.

29.    Thus, as a result of user reports, Defendants were aware of the degradation of the PE-PUR sound abatement foam used in the Recalled Devices, yet continued to manufacture and sell the Recalled Devices with such awareness for a significant period of time.  During this period, Defendants unreasonably and unjustly profited from the manufacture and sale of the Recalled Devices and unreasonably put users of the Recalled Devices at risk of developing adverse health effects, including cancer.

30.    In fact, it was only after the early April 2021 release of the Philips Respironics DreamStation 2, a breathing device which does not contain the dangerous PE-PUR Foam, that Philips publicly admitted the problems with the Recalled Devices in a regulatory filing.  As detailed above, it was not for another seven weeks that Philips officially recalled the Recalled Devices.

## VII.   **Philips' Recall Provides No Relief to Class Members**

31.    As part of its announcement of the recall on June 14, 2021, Philips announced that it would be implementing "a comprehensive repair and replacement program for the affected devices" as follows:

---

[12]     *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 16, 2021).

**Repair and replacement program**

Philips is providing the relevant regulatory agencies with required information related to the launch and implementation of the projected correction. The company will replace the current sound abatement foam with a new material and has already begun the preparations, which include obtaining the relevant regulatory clearances. Philips aims to address all affected devices in scope of this correction as expeditiously as possible.

As part of the program, the first-generation DreamStation product families will be modified with a different sound abatement foam and shipped upon receipt of the required regulatory clearances. Philips' recently launched next-generation CPAP platform, DreamStation 2, is not affected by the issue. To support the program, Philips is increasing the production of its DreamStation 2 CPAP devices, that are available in the US and selected countries in Europe.[13]

32.     As the above language makes clear, Philips does not intend to replace the Recalled Devices with its newly manufactured DreamStation 2 device that is not affected by the recall (although individuals can purchase a new Philips DreamStation 2 on their own), but instead intends to switch out the dangerous PE-PUR foam in each Recalled Device.  This is a time-consuming process that will leave Recalled Device users without use of their devices for untold periods of time.

33.     As implemented to date, the "repair and replacement" program has not repaired or replaced a single Recalled Device.  Recalled Device users seeking to have their devices repaired or replaced are asked to register their devices on the Philips website, but are provided only with a registration number and no information as to when they can expect their Recalled Devices to be repaired.  Upon information and belief, Philips has not provided ***any*** guidance to ***anyone*** as to when Recalled Devices will be repaired.

**VIII.   Plaintiff Matthew Hufnus**

34.     Plaintiff Matthew Hufnus is a resident of Cook County, Illinois.

---

[13]     *Id.*

35.     Plaintiff Hufnus acquired and began using one of the Recalled Devices, a Philips Respironics DreamStation device in 2017.

36.     Plaintiff Hufnus used his DreamStation device regularly to treat a health condition until learning that the device was one of the Recalled Devices.

37.     As a result of the health risks associated with continued use of his device and the recall, Plaintiff Hufnus' DreamStation device is now worthless and Plaintiff Hufnus will be forced to replace the device at considerable cost.

## IX.    Plaintiff Christopher Ludgate

38.     Plaintiff Christopher Ludgate is a resident of Queens County, New York.

39.     Plaintiff Ludgate acquired and began using one of the Recalled Devices, a Philips Respironics DreamStation CPAP device in 2020.

40.     Plaintiff Ludgate used his Philips Respironics DreamStation CPAP device regularly to treat a health condition until learning that the device was one of the Recalled Devices.

41.     As a result of the health risks associated with continued use of her device and the recall, Plaintiff Ludgate's Philips Respironics DreamStation CPAP device is now worthless and Plaintiff Ludgate will be forced to replace the device at considerable cost.

## X.    Plaintiff Tony Shapiro-Bey

42.     Plaintiff Tony Shapiro-Bey is a resident of New York County, New York.

43.     Plaintiff Shapiro-Bey lived in Baltimore, Maryland prior to moving to New York County, New York.

44.     Plaintiff Shapiro-Bey acquired and began using one of the Recalled Devices and regularly used his DreamStation device regularly to treat a health condition.

45.     As a result of the health risks associated with continued use of his device and the recall, Plaintiff Shapiro-Bey's Philips Respironics DreamStation device is now worthless and Plaintiff Shapiro-Bey will be forced to replace the device at considerable cost.

**XI.     Plaintiff Stephen B. Smith**

46.     Plaintiff Stephen B. Smith is a resident of Grant County, Indiana.

47.     Plaintiff Smith acquired and began using one of the Recalled Devices, a Philips Respironics DreamStation CPAP device, in 2019.

48.     Plaintiff Smith used his Philips Respironics DreamStation regularly to treat a health condition until learning that the device was one of the Recalled Devices on or after June 14, 2021.

49.     As a result of the health risks associated with continued use of his device and the recall, Plaintiff Smith's Philips Respironics DreamStation device is now worthless and Plaintiff Smith will be forced to replace the device at considerable cost.

## TOLLING AND ESTOPPEL

## I.     DISCOVERY RULE TOLLING

50.     Plaintiffs, the Class, and Subclasses had no way of knowing about Philips' conduct with respect to the health risks associated with the use of the Recalled Devices.

51.     Neither Plaintiffs nor any other members of the Class or Subclasses, through the exercise of reasonable care, could have discovered the conduct by Philips alleged herein.  Further, Plaintiffs and members of the Class and Subclasses did not discover and did not know of facts that would have caused a reasonable person to suspect that Philips was engaged in the conduct alleged herein.

52.     For these, reasons, all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiffs, the Class, and the Subclasses.

## II.    FRAUDULENT CONCEALMENT TOLLING

53.    By failing to provide immediate notice of the adverse health effects associated with continued use of the Recalled Devices, Philips concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Class and Subclasses.

54.    Upon information and belief, Philips intended its acts to conceal the facts and claims from Plaintiffs and members of the Classes and Subclasses. Plaintiffs and the members of the Class and Subclasses were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes or Subclasses should be tolled.

## <u>CLASS ACTION ALLEGATIONS</u>

55.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

56.    Plaintiffs seek class certification on behalf of a class defined as follows (the "Class"):

**NATIONWIDE CLASS:**  all persons in the United States who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Class").

57.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**ILLINOIS SUBCLASS:**  all persons who were or are citizens of the State of Illinois who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Illinois Subclass").

58.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**INDIANA SUBCLASS:**  all persons who were or are citizens of the State of Indiana who, from the beginning of any applicable limitations period through June 14, 2021,

purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Indiana Subclass").

59.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MARYLAND SUBCLASS:**  all persons who were or are citizens of the State of Maryland who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Maryland Subclass").

60.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MASSACHUSETTS SUBCLASS:**  all persons who were or are citizens of the Commonwealth of Massachusetts who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Massachusetts Subclass").

61.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**NEW YORK SUBCLASS**:  all persons who were or are citizens of the State of New York who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "New York Subclass").

62.    Plaintiffs reserve the right to modify or refine the definitions of the Class or Subclasses based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

63.    Excluded from the Class and Subclasses are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants' and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendants or their parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel

for Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

64.    **Ascertainability**.  The proposed Classes and Subclasses are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass.  Further, the Classes and Subclasses can be readily identified through records maintained by Defendants.

65.    **Numerosity (Rule 23(a)(1)).**  The Classes and Subclasses are so numerous that joinder of individual members herein is impracticable.  The exact number of members of the Class and Subclasses, as herein identified and described, is not known, but sales figures indicate that millions of individuals have purchased the Philips Recalled Devices.

66.    **Commonality (Rule 23(a)(2))**.  Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

- whether Defendants owed a duty of care to Plaintiffs and the Classes;

- whether Defendants knew or should have known that the PE-PUR Foam used for sound abatement posed health risks;

- whether Defendants wrongfully represented that the PE-PUR Foam used for sound abatement in the Recalled Devices was safe;

- whether the Recalled Devices retained any value post-recall;

- whether Defendants wrongfully represented that the Recalled Devices were safe to use;

- whether Defendants wrongfully failed to disclose that the PE-PUR Foam used for sound abatement in the Recalled Devices posed health risks to Recalled Device users;

- whether Defendants' representations in advertising, warranties, packaging, and/or labeling were false, deceptive, and misleading;

- whether those representations were likely to deceive a reasonable consumer;

- whether a reasonable consumer would consider the presence, or risk of, health risks as a material fact in purchasing one of the Recalled Devices;

- whether Defendants had knowledge that those representations were false, deceptive, and misleading;

- whether Defendants breached their express warranties;

- whether Defendants breached their implied warranties;

- whether Defendants engaged in unfair trade practices;

- whether Defendants engaged in false advertising;

- whether Defendants' conduct was negligent per se;

- whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

- whether Plaintiffs and the members of the Class and Subclasses are entitled to actual, statutory, and punitive damages; and

- whether Plaintiffs and members of the Class and Subclasses are entitled to declaratory and injunctive relief.

67. **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other members of the proposed Class and Subclasses. Plaintiffs and members of the Class and

Subclasses (as applicable) suffered injuries as a result of Philips' wrongful conduct that is uniform across the Class and Subclasses.

68.     **Adequacy (Rule 23(a)(4)).**   Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class and Subclasses.  Plaintiffs have retained counsel competent and experienced in complex litigation and class actions.  Plaintiffs have no interest that is antagonistic to those of the Class and Subclasses, and Defendants have no defenses unique to Plaintiffs.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclasses.

69.     **Substantial Benefits**.  This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclasses is impracticable.  The prosecution of separate actions by individual members of the Class and Subclasses would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes and Subclasses, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.  This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

70.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

71.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclasses as a whole.  Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### BREACH OF EXPRESS WARRANTY

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

72.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

73.     Philips marketed and sold the Recalled Devices into the stream of commerce with the intent that the Recalled Devices would be purchased by Plaintiffs and the Class and State Subclasses.

74.     Philips expressly warranted, advertised, and represented to Plaintiffs and the Class and State Subclasses that the Recalled Devices were safe and appropriate for human use.

75.     Philips made these express warranties regarding the Recalled Devices quality and fitness for use in writing through its website, advertisements, and marketing materials and on the Recalled Devices' packaging and labels.  These express warranties became part of the basis of the

bargain that Plaintiffs and the Class and State Subclasses entered into upon purchasing the Recalled Devices.

76.    Philips' advertisements, warranties, and representations were made in connection with the sale of the Recalled Devices to Plaintiffs and the Class and State Subclasses.  Plaintiffs and the Class and State Subclasses relied on Philips' advertisements, warranties, and representations regarding the Recalled Devices in deciding whether to purchase Philips' products.

77.    Philips' Recalled Devices do not conform to Philips' advertisements, warranties and representations in that they are not safe, healthy, and appropriate for human use.

78.    Philips therefore breached its express warranties by placing Recalled Devices into the stream of commerce and selling them to consumers, when their use had dangerous effects and was unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Philips.  These associated health effects substantially impair the use, value, and safety of Recalled Devices.

79.    Philips was aware, or should have been aware, of the toxic or dangerous health effects of the use of the Recalled Devices, but nowhere on the package labeling or on Philips' websites or other marketing materials did Philips warn Plaintiffs and members of the Class and State Subclasses that they were at risk of developing health problems as a result of the dangerous PE-PUR Foam used in the Recalled Devices.

80.    Instead, Philips concealed the dangerous health effects of the PE-PUR Foam used in the Recalled Devices and deceptively represented that these products were safe, healthy, and appropriate for use.  Philips thus utterly failed to ensure that the material representations it was making to consumers were true.

81.    The adverse health effects associated with use of the Recalled Devices existed when they left Philips' possession or control and were sold to Plaintiffs and members of the Class and State Subclasses.  The dangers associated with use of the Recalled Devices were undiscoverable by Plaintiffs and members of the Class and State Subclasses at the time of purchase of the Recalled Devices.

82.    As manufacturers, marketers, advertisers, distributors, and sellers of Recalled Devices, Philips had exclusive knowledge and notice of the fact that the Recalled Devices did not conform to the affirmations of fact and promises.

83.    In addition, or in the alternative, to the formation of an express contract, Philips made each of the above-described representations to induce Plaintiffs and members of the Class and State Subclasses to rely on such representations.

84.    Philips' affirmations of fact and promises were material, and Plaintiffs and members of the Class and State Subclasses reasonably relied upon such representations in purchasing the Recalled Devices.

85.    All conditions precedent to Philips' liability for its breach of express warranty have been performed by Plaintiffs or members of the Class or State Subclasses.

86.    Affording Philips an opportunity to cure its breaches of written warranties would be unnecessary and futile here.  Philips was placed on reasonable notice that the PE-PUR Foam in the Recalled Devices was unsafe from user reports.  Philips had ample opportunity either to stop using the PE-PUR Foam or to replace the PE-PUR Foam in the Recalled Devices to make them safe and healthy for use by Plaintiffs and members of the Class and State Subclasses, but failed to do so until now.

87.     As a direct and proximate result of Philips' breaches of express warranty, Plaintiffs and members of the Class and State Subclasses have been damaged because they did not receive the products as specifically warranted by Philips.  Plaintiffs and members of the Class and State Subclasses did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for the Recalled Devices.

88.      Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their express warranties and resulting breach.

## SECOND CLAIM FOR RELIEF

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

89.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

90.     Philips are merchants engaging in the sale of goods to Plaintiffs and the Class and State Subclasses.

91.     There was a sale of goods from Philips to Plaintiffs and the Class and State Subclasses.

92.     At all times mentioned herein, Philips manufactured or supplied Recalled Devices, and prior to the time the Recalled Devices were purchased by Plaintiffs and the Class and State Subclasses, Philips impliedly warranted to them that the Recalled Devices were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Recalled Devices' labels and packaging, including that the Recalled Devices were safe and appropriate for human use.  Plaintiffs and the Class and State Subclasses relied on Philips' promises and affirmations of fact when they purchased the Recalled Devices.

23

93.     Contrary to these representations and warranties, the Recalled Devices were not fit for their ordinary use, and did not conform to Philips' affirmations of fact and promises as use of the Recalled Devices was accompanied by the risk of adverse health effects that do not conform to the packaging.

94.     Philips breached its implied warranties by selling Recalled Devices that failed to conform to the promises or affirmations of fact made on the packaging or label as use of each Recalled Devices was accompanied by the risk of developing adverse health effects that do not conform to the packaging.

95.     Philips was on notice of this breach, as it was made aware of the adverse health effects accompanying use of the Recalled Devices through user reports submitted to Philips.

96.     Privity exists because Philips impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that Recalled Devices were natural, and suitable for use to treat health conditions by individuals, and made no mention of the attendant health risks associated with use of the Recalled Devices.

97.     As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that each Recalled Device they purchased is worth less than the price they paid and that they would not have purchased at all had they known of the attendant health risks associated with the use of each Recalled Device.

98.     Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their implied warranties and resulting breach.

## THIRD CLAIM FOR RELIEF

### FRAUDULENT MISREPRESENTATION

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

99.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

100.    Philips falsely represented to Plaintiffs and the Class and State Subclasses that the Recalled Devices were safe for human use.

101.    Philips intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class and State Subclasses to purchase Recalled Devices.

102.    Philips knew that its representations about the Recalled Devices were false in that the Recalled Devices contained PE-PUR Foam and were thus at risk of causing adverse health effects to users of the Recalled Devices which does not conform to the products' labels, packaging, advertising, and statements.  Philips knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class and State Subclasses.

103.    Plaintiffs and the Class and State Subclasses did in fact rely on these misrepresentations and purchased Recalled Devices detriment.  Given the deceptive manner in which Philips advertised, represented, and otherwise promoted the Recalled Devices, Plaintiffs' and the Class' and State Subclasses' reliance on Philips' misrepresentations was justifiable.

104.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks, including cancer, associated with the use of the Recalled Devices that do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

25

105.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CLAIM FOR RELIEF

### FRAUD BY OMISSION

**(on behalf of Nationwide Class or, alternatively, the State Subclasses)**

106.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

107.    Philips concealed from and failed to disclose to Plaintiffs and the Class and State Subclasses that use of Recalled Devices is accompanied by a risk of adverse health effects that does not conform to the products' labels, packaging, advertising, and statements.

108.    Philips was under a duty to disclose to Plaintiffs and the Class and State Subclasses the true safety, quality, characteristics, fitness for use, and suitability of the Recalled Devices because: (1) Philips was in a superior position to know the true state of facts about its products; (2) Philips was in a superior position to know the risks associated with the use of, characteristics of, and suitability of Recalled Devices for use by individuals; and (3) Philips knew that Plaintiffs and the Class and State Subclasses could not reasonably have been expected to learn or discover that Recalled Devices were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Recalled Devices.

109.    The facts concealed or not disclosed by Philips to Plaintiffs and the Class and State Subclasses were material in that a reasonable consumer would have considered them important when deciding whether to purchase Recalled Devices.

110.    Plaintiffs and the Class and State Subclasses justifiably relied on the Philips' omissions to their detriment.  The detriment is evident from the true quality, characteristics, and

risk associated with the use of Recalled Devices, which is inferior when compared to how Recalled Devices are advertised and represented by Philips.

111.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks associated with the use of the Recalled Devices which do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

112.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FIFTH CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

113.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

114.    Philips had a duty to Plaintiffs and the Class and State Subclasses to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of Recalled Devices.

115.    Philips breached its duty to Plaintiffs and the Class by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Philips and by failing to promptly remove Recalled Devices from the marketplace or to take other appropriate remedial action upon becoming aware of the health risks of the Recalled Devices.

116.    Philips knew or should have known that the qualities and characteristics of the Recalled Devices were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Philips.  Specifically, Philips knew or should have known that: (1) the use of Recalled Devices was accompanied by risk of adverse health effects do not conform to the packaging and labeling; (2) the Recalled Devices were adulterated, or at risk of being adulterated, by the PE-PUR Foam; and (3) the Recalled Devices were otherwise not as warranted and represented by Philips.

117.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known they contained PE-PUR Foam that could cause users of the Recalled Devices to suffer adverse health effects that do not conform to the products' labels, packaging, advertising, and statements.

118.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

119.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

120.    Plaintiffs and the Class and State Subclasses conferred substantial benefits on Philips through their purchase of Recalled Devices.  Philips knowingly and willingly accepted and enjoyed these benefits.

121.    Philips either knew or should have known that the payments rendered by Plaintiffs and the Class and State Subclasses were given with the expectation that the Recalled Devices

would have the qualities, characteristics, and suitability for use represented and warranted by Philips. As such, it would be inequitable for Philips to retain the benefit of the payments under these circumstances.

122. Philips' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Philips to retain the benefits without payment of the value to Plaintiffs and the Class and State Subclasses.

123. Plaintiffs and the Class and State Subclasses are entitled to recover from Philips all amounts wrongfully collected and improperly retained by Philips, plus interest thereon.

124. Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**

**815 ILCS 505/1, *et seq*.**

**(on behalf of Plaintiff Hufnus and the Illinois Subclass)**

125. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

126. Plaintiff Hufnus and Illinois Subclass Members are "consumers," as defined by ILCS 505/1(e).

127. Each Defendant is a "person" as defined by 815 ILCS 505/1(c).

128. The Recalled Devices sold by Philips are "merchandise" as defined by 815 ILCS 505/1(b).

129. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ILCS") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment

of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."  815 ILCS 505/2.

130.    At all times mentioned herein, Philips engaged in trade or commerce in Illinois as defined by ILCS 815 ILCS 505/1(f), in that they advertised, offered for sale, sold or distributed goods or services in Illinois and/or engaged in trade or commerce directly or indirectly affecting the people of Illinois.

131.    Philips repeatedly advertised, both on the labels for the Recalled Devices, on its websites, and through a national advertising campaigns, among other items, that the Recalled Devices were and are safe for use by individuals when in fact they contain an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices.

132.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to the Recalled Devices without being aware that the Recalled Devices contained an unsafe material that could cause adverse health effects.  As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiff Hufnus and Illinois Subclass Members suffered damages by purchasing the Recalled Devices because they would not have purchased the Recalled Devices had they known the truth, and they received a product that was worthless because it contains unsafe PE-PUR Foam.

133.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiff Hufnus and Illinois Subclass Members in the form of the loss or diminishment of value of the Recalled Devices, which allowed Defendants to profit at the expense of Plaintiff Hufnus

and Illinois Subclass Members.  The injuries Plaintiff Hufnus and Illinois Subclass Members were to legally protected interests.  The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

134.    Plaintiff Hufnus and the Illinois Subclass Members seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by 815 ILCS 505/1 *et seq.* and applicable law.

## EIGHTH CLAIM FOR RELIEF

### INDIANA DECEPTIVE CONSUMER SALES ACT

### Ind. Code § 24-5-0.5-0.1, *et seq*.

### (on behalf of Plaintiff Smith and the Indiana Subclass)

135.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

136.    Each Defendant is a "person" as defined by Ind. Code §24-5-0.5-2(a)(2).

137.    Each Defendants is a "supplier" as defined by Ind. Code §24-5-0.5-2(a)(3).

138.    Sales of the Recalled Devices by Philips Plaintiff Smith and Indiana Subclass members constitute "consumer transactions" as that term is defined at Ind. Code §24-5-0.5-2(a)(1).

139.    Philips engaged in unfair and deceptive acts in violation of the Indiana Deceptive Consumer Sales Act, Ind. Code §§24-5-0.5-0.1, *et seq*., by the practices described above, and by knowingly and intentionally concealing the true nature of the Recalled Devices from Plaintiff Smith and Indiana Subclass members.  These acts and practices violate, *inter alia*, the following sections of the Indiana Deceptive Consumer Sales Act, Ind. Code §24-5-0.5-3:

(b) [T]he following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts:

(1) That such subject of a consumer transaction has sponsorship, approval,

performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have;

(2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

140.    Philips' unfair or deceptive acts or practices occurred repeatedly in Philips' trade or business and were capable of deceiving the purchasing public.

141.    Philips knew that the Recalled Devices contained dangerous PE-PUR Foam, making them susceptible to failure for their essential purpose, and that they would become useless and worthless as a result of reasonable and foreseeable use by consumers.

142.    Philips owed a duty to Plaintiff Smith and Indiana Subclass Members to disclose the presence of PE-PUR Foam in the Recalled Devices as well as the dangers posed by the PE-PUR Foam in the Recalled Devices because:

    a.    Philips was in a superior position to know the true state of facts about the Defect within the Recalled Devices;

    b.    Plaintiff Smith and Indiana Subclass could not reasonably have been expected to learn or discover that the Recalled Devices contained dangerous PE-PUR and thus were not in accordance with Philips' advertisements and representations;

    c.    Philips knew that Plaintiff Smith and Indiana Subclass Members could not reasonably have been expected to learn or discover the presence of or dangers posed by the dangerous PE-PUR Foam in the Recalled Devices; and

    d.    Philips actively concealed and failed to disclose the presence of and dangers posed by the PE-PUR Foam within the Recalled Devices from Plaintiff Smith and Indiana Subclass Members.

143.    By failing to disclose the presence of and dangers posed by the PE-PUR Foam in the Recalled Devices at the time of sale, Philips knowingly and intentionally concealed material facts and breached their duty not to do so.

144.    The facts Philips concealed or did not disclose to Plaintiff Smith and Indiana Subclass Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Recalled Devices.  Had Plaintiff Smith and Indiana Subclass Members known of the presence of and dangers posed by the PE-PUR Foam, they would not have purchased the Recalled Devices or would have paid less for the Recalled Devices.

145.    Philips' violations were willful and were done as part of a scheme, artifice, or device with intent to defraud or mislead, and therefore are incurable deceptive acts or omissions under the Indiana Deceptive Consumer Sales Act.

146.    The Indiana Deceptive Consumer Sales Act provides that "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand dollars ($1,000)."  Ind. Code §24-5-0.5-4(a).

147.    The Indiana Deceptive Consumer Sales Act provides that "[a]ny person who is entitled to bring an action under subsection (a) on the person's own behalf against a supplier for damages for a deceptive act may bring a class action against such supplier on behalf of any class of persons of which that person is a member . . . ."  Ind. Code §24-5-0.5-4(b).

148.    Plaintiff Smith's and Indiana Subclass Members' injuries were proximately caused by Philips' fraudulent and deceptive business practices.

149.    Therefore, Plaintiff Smith and Indiana Subclass Members are entitled to damages and equitable relief under the Indiana Deceptive Consumer Sales Act.

## NINTH CLAIM FOR RELIEF

**MARYLAND CONSUMER PROTECTION ACT**

**Md. Code Ann. Com. Law §§13-101, *et seq*.**

**(on behalf of Plaintiff Shapiro-Bey and the Maryland Subclass)**

150.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

151.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair, abusive or deceptive trade practice in the sale or lease of consumer goods or services.

152.    The Maryland CPA also provides that unfair, abusive, or deceptive trade practices include, among other things, any:  (1) false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (2) representation that: (i) consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have; or (ii) consumer goods, consumer, realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not; (3) failure to state a material fact if the failure deceives or tends to deceive; and (4) deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with (i) the promotion or sale of any consumer goods, consumer realty, or consumer service.

153.    The Maryland CPA further provides that any person may bring an action to recover for injury or loss sustained by him as the result of an unfair, abusive or deceptive practice.

154.    At all relevant times, Plaintiff Shapiro-Bey, Maryland Subclass Members, and each Defendant were either individuals, corporations, business trusts, statutory trusts, estates, trusts, partnerships, associations, two or more persons having a joint or common interest, or another legal or commercial entity.

155.    Philips willfully engaged in unfair, abusive, and deceptive trade practices as described in the allegations above.

156.    Philips' conduct violates several provisions of the Maryland CPA, including but not limited to:

(a) Section 13-301(1):  Making false or misleading oral or written statements, visual descriptions, or other representations of any kind which have the capacity, tendency, or effect of deceiving or misleading consumers - here, Philips' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of exposure to the adverse health effects caused by PE-PUR Foam degradation;

(b) Section 13-301(2)(b)(i): Representing that consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not - Defendant's branding of the Recalled Devices carried with it the impression that the Recalled Devices that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of exposure to the adverse health effects caused by PE-PUR Foam degradation;

(c) Section 13-301(2)(b)(ii): Representing that consumer good, consumer realty, or consumer services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another - Philips' Recalled Devices carried with them the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of exposure to the adverse health effects caused by PE-PUR Foam degradation;

(d) Section 13-301(3):  Failing to state a material fact if the failure deceives or tends to deceive - Defendants failed to state the material fact that the Recalled Devices contained PE-PUR Foam which was at risk of degradation and causing adverse health effects to Recalled Device users, which both

tends to deceive and did deceive Plaintiff Shapiro-Bey and the Maryland Subclass; and

(e) Section 13-301(9)(I): Committing deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that the consumer rely on the same in connection with the promotion or sale of any consumer goods - Philips deceived Plaintiff Shapiro-Bey and the Maryland Subclass by misrepresenting the Recalled Devices as safe devices by knowingly concealing, suppressing, and omitting from all marketing the material fact that the Recalled Devices contained unsafe PE-PUR Foam.

157.    Philips' omissions in violation of the Maryland CPA were likely to mislead an ordinary consumer.  Plaintiff Shapiro-Bey and the Maryland Subclass reasonably understood Philips' omissions to mean that the Recalled Devices did not pose dangers to Recalled Devices users due to the PE-PUR Foam in the Recalled Devices.  Plaintiff Shapiro-Bey and the Maryland Subclass also reasonably understood Philips' omissions to mean that the Recalled Devices were not of substandard quality.

158.    If Philips had disclosed that its Recalled Devices contained toxins at levels that are dangerous to users of the Recalled Devices and were of substandard quality, Plaintiff Shapiro-Bey and the Maryland Subclass would have been aware that the Recalled Devices contained dangerous PE-PUR Foam and was of substandard quality, and Plaintiff Shapiro-Bey and the Maryland Subclass would not have purchased Philips' Recalled Devices.

159.    Plaintiff Shapiro-Bey and the Maryland Subclass were deceived by Philips' deceptive and unfair acts and practices in that had they known the truth they would not have purchased the Recalled Devices or would have paid less for the Recalled Devices.

160.    Instead, as a result of Philips' misrepresentation, Plaintiff Shapiro-Bey and Maryland Subclass Members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the Recalled Devices as represented denying

36

them of the benefit of their bargain; and (2) Plaintiff Shapiro-Bey and Maryland Subclass Members paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

161.    Plaintiff Shapiro-Bey and the Maryland Subclass relied to their detriment on Philips' omissions in purchasing the Recalled Devices.

162.    Therefore, Plaintiff Shapiro-Bey and Maryland Subclass Members are entitled to damages and equitable relief under the Maryland Consumer Protection Act, Md. Code Ann. Com. Law §§13-101, *et seq.*

## TENTH CLAIM FOR RELIEF

### MASSACHUSETTS CONSUMER PROTECTION ACT

### Mass. Gen. Laws ch. 93, §§1, *et seq.*

### (on behalf of the Nationwide Class, or alternatively, the Massachusetts Subclass)

163.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

164.    Plaintiffs intend to assert and prosecute claims under the under the Massachusetts Consumer Protection Law, M.G.L.A. ch. 93A §1, *et seq.* ("MCPL") against Defendants. Defendant Philips NA's principal place of business is located in Cambridge, Massachusetts.  This Count provides notice that this Complaint shall be amended to demand all appropriate relief once Plaintiffs have provided notice in accordance with M.G.L. ch. 93A §9(3) to Defendant Philips NA and the statutory period for a response has passed, subject to any response by Defendant Philips NA.

165.    Each Defendant is a "person" as defined by M.G.L.A. 93A §1(a).

166.    Plaintiffs, members of the Class, and members of the Massachusetts Subclass are actual or potential consumers of Recalled Devices.

167.    Philips engaged in engaged in deceptive or unfair acts or practices in the in the conduct of any trade or commerce, in violation of M.G.L. 93A §2(a), including but not limited to the following:

(a)    Knowingly or recklessly made a false representation as to the characteristics and use of Recalled Devices, in violation of 93A §2(a);

(b)    Represented that Recalled Devices are safe for use, in violation of 93A §2(a);

(c)    Advertised Recalled Devices with an intent not to sell it as advertised, in violation of 93A §2(a); and

(d)    Failed to disclose the material information that Recalled Devices contained unsafe PE-PUR Foam and that Recalled Devices users were at risk of suffering adverse health effects, in violation of 93A §2(a).

168.    As detailed, *infra*, Philips' deceptive trade practices significantly impacted the public, because there are millions of consumers of Recalled Devices, including Plaintiffs, members of the Class, and members of the Massachusetts Subclass.

169.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Recalled Devices without being aware that Recalled Devices were unsafe to use.  As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiffs and members of the Class and the Massachusetts Subclass suffered damages by purchasing Recalled Devices because they would not have purchased Recalled Devices had they known the truth, and they received a product that was worthless because it is unsafe to use.

170.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiffs, members of the Class, and members of the Massachusetts Subclass in the form of the loss or diminishment of value of Recalled Devices Plaintiffs, members of the Class, and members of the Massachusetts Subclass purchased, which allowed Philips to profit at the expense of

Plaintiffs, members of the Class, and members of the Massachusetts Subclass.  The injuries to Plaintiffs, members of the Class, and members of the Massachusetts were to legally protected interests.  The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

171.    Plaintiffs, members of the Class, and members of the Massachusetts Subclass seek relief under 93A §9 including, not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

## ELEVENTH CLAIM FOR RELIEF

### NEW YORK GENERAL BUSINESS LAW

### N.Y. Gen. Bus. Law §349, *et seq.*

### (on behalf of Plaintiff Shapiro-Bey and the New York Subclass)

172.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

173.    New York General Business Law ("GBL") §349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ."  GBL §349(a).

174.    The practices alleged herein - namely, Defendant's use of deception, fraud, false pretenses, and omissions of material fact in connection with its failure to disclose to Plaintiff Eck-London, Plaintiff Freeman, and the New York Subclass that the Recalled Devices contained the dangerous material PE-PUR Foam which does not conform to the products' labels, packaging, advertising, and statements - are unfair, deceptive, and misleading in violation of GBL §349.

175.    Because the dangers presented by the presence of PE-PUR Foam pertain to the Recalled Devices' central functionality, *i.e.*, the safety of the devices for human use, these failures reflect material facts, and Philips was obligated to disclose these material facts to Plaintiff Shapiro-

Bey and members of the New York Subclass.  A reasonable consumer attaches importance to such material facts and are induced to act thereon in making purchasing decisions.

176.    Because Philips failed to disclose these material facts, consumers were misled.

177.    At all relevant times, Philips had exclusive knowledge that the PE-PUR Foam present in the Recalled Devices could cause users of the Recalled Devices to suffer adverse health effects which do not conform to the products' labels, packaging, advertising, and statements.

178.    Philips further knew or reasonably should have known that there was no disclosure on the Recalled Devices' packaging, or at the point of sale, that the products contained dangerous materials that were at risk of causing users of the Recalled Devices to suffer from adverse health effects.

179.    At all relevant times, Philips knew or reasonably should have known that Plaintiff Shapiro-Bey and other members of the New York Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Philips' foregoing unfair practices.

180.    The foregoing deceptive acts and practices were directed at Plaintiff Shapiro-Bey and other members of the New York Subclass.

181.    Plaintiff Shapiro-Bey and members of the New York Subclass have been injured as a direct and proximate result of Philips' violations described above as they would not have purchased the Recalled Devices at all had they known of the aforementioned risk of suffering adverse health effects as a result of the presence of the dangerous PE-PUR Foam.

182.    As a result of Philips' unlawful action, Plaintiff Shapiro-Bey and members of the New York Subclass seek to enjoin Defendant's deceptive and unlawful acts and practices described herein to recover actual damages, fifty dollars or both, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

<u>**TWELFTH CLAIM FOR RELIEF**</u>

**NEW YORK GENERAL BUSINESS LAW**

**N. Y. Gen. Bus. Law §350,** *et seq*.

**(on behalf of Plaintiff Shapiro-Bey and the New York Subclass)**

183.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

184.    GBL §350 defines false advertising as:

> "advertising, including labeling, of a commodity . . . if such advertising is
> misleading in a material respect. In determining whether any advertising is
> misleading, there shall be taken into account ( among other things) not
> only representations made by statement, word, design, device, sound or
> any combination thereof, but also the extent to which the advertising fails
> to reveal facts material in the light of such representations with respect to
> the commodity . . . to which the advertising relates under the conditions
> prescribed in said advertisement, or under such conditions as are
> customary or usual."

185.    The practices alleged herein - namely, Defendant's use of deception, fraud, false

pretenses, and omissions of material fact in connection with its failure to disclose to Plaintiff

Eck-London, Plaintiff Freeman, and the New York Subclass, that the Recalled Devices contained

that the Recalled Devices contained the dangerous material PE-PUR Foam which does not

conform to the products' labels, packaging, advertising, and statements - fail to reveal material

facts in respect to the Recalled Devices, and therefore violate GBL §350.

186.    Because these practices pertain to the Recalled Devices' central functionality, *i.e.*,

the safety of the Recalled Devices for human use, these failures reflect material facts, and Philips

was obligated to disclose these material facts to Plaintiff Shapiro-Bey and members of the New

York Subclass.  A reasonable consumer attaches importance to such material facts and are

induced to act thereon in making purchasing decisions.  Because Philips failed to disclose these

material facts, consumers were misled.

187.     At all relevant times, Philips knew or reasonably should have known that Plaintiff Shapiro-Bey and other members of the New York Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Philips foregoing unfair practices.

188.     At all relevant times, Philips knew or reasonably should have known that Plaintiff Shapiro-Bey and other members of the New York Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Philips' foregoing unfair practices.

189.     The foregoing deceptive acts and practices were directed at Plaintiff Shapiro-Bey and other members of the New York Subclass and have resulted in consumer injury or harm to the New York public.

190.     Plaintiff Shapiro-Bey and other members of the New York Subclass have been injured as a direct and proximate result of Philips' violations described above as they would not have purchased the Recalled Devices at all had they known of the aforementioned risk of suffering adverse health effects as a result of the presence of the dangerous PE-PUR Foam.

191.     As a result of Defendant's unlawful action, Plaintiff Shapiro-Bey and members of the New York Subclass seek to enjoin Philips' misleading and unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater (or both), as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

<u>**THIRTEENTH CLAIM FOR RELIEF**</u>

**PENNSYLVANIA UNFAIR TRADE PRACTICES**

**AND CONSUMER PROTECTION LAW**

**73 Pa. Cons. Stat. Ann. §§201-1,** *et seq.*

**(on behalf of the Nationwide Class)**

192.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

193.    At all times mentioned herein, Philips engaged in "trade" or "commerce" in Pennsylvania, as defined by 73 Pa. Cons. Stat. Ann. §201-2(3), in that they advertised, offered for sale, and sold goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "services," "property," "article[s]," "commodit[ies]," or "thing[s] of value" in Pennsylvania.

194.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTCPL"), 73 Pa. Cons. Stat. Ann. §201-3 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful."

195.    For the reasons discussed herein, Philips violated and continues to violate the UTCPL by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by UTCPL §§201-1, *et seq.*   Philips' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

196.    Philips repeatedly advertised on the labels and packing for the Recalled Devices, on Philips' websites, and through national advertising campaigns, among other items, that the Recalled Devices were safe and fit for human use.  Philips failed to disclose the material

information that the PE-PUR Foam used in the Recalled Devices, and therefore the Recalled Devices themselves, were unsafe and unfit for human use.

197.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to the Recalled Devices without being aware that the PE-PUR Foam used in the Recalled Devices, and therefore the Recalled Devices themselves, were unsafe and unfit for human use.  As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiffs and members of the Class suffered damages by purchasing Recalled Devices because they would not have purchased Recalled Devices had they known the truth, and they received a product that was worthless because it contains unsafe PE-PUR Foam which can cause a number of adverse health effects, including cancer.

198.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiffs and members of the Class in the form of the loss or diminishment of value of the Recalled Devices Plaintiffs and Class Members purchased, which allowed Defendants to profit at the expense of Plaintiffs and Class Members.  The injuries to Plaintiffs and members of the Class were to legally protected interests.  The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

199.    Plaintiffs and Class Members seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by 73 Pa. Cons. Stat. Ann. §201-9.2 and applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Philips as to each and every count, including:

A. An order certifying this action and the Class and State Subclasses requested herein as a class action, designating Plaintiffs as the representatives of the Class and State Subclasses, and appointing Plaintiffs' counsel as counsel to the Class and State Subclasses;

B. An order declaring that Philips' actions constitute: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) fraudulent misrepresentation; (iv) fraud by omission; and (v) unfair and deceptive business practices in violation of Illinois, Indiana, Maryland, Massachusetts, New York, and Pennsylvania consumer protection statutes, and that Philips is liable to Plaintiffs, members of the Class, and members of the State Subclasses, as described herein, for damages arising therefrom;

C. An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Philips from continuing the unlawful practices alleged herein, and injunctive relief to remedy Philips' past conduct;

D. A judgment awarding Plaintiffs, members of the Class, and members of the State Subclasses all appropriate damages, in an amount to be determined at trial;

E. A judgment awarding equitable, injunctive, and/or declaratory relief as may be appropriate.

F. A judgment awarding Plaintiffs, members of the Class, and members of the State Subclasses prejudgment and post-judgment interest, as permitted by law;

G. A judgment awarding Plaintiffs, members of the Class, and members of the State

Subclasses costs and fees, including attorneys' fees, as permitted by law; and

H. Grant such other legal, equitable or further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.


DATED:         July 9, 2021                    Respectfully submitted,

                                               */s/ Sean K. McElligott*
                                               Sean K. McElligott (Mass. BBO #651710)
                                               David S. Golub (*pro hac vice* forthcoming)
                                               Steven L. Bloch (*pro hac vice* forthcoming)
                                               Ian W. Sloss (*pro hac vice* forthcoming)
                                               Zachary A. Rynar (*pro hac vice* forthcoming)
                                               **SILVER GOLUB & TEITELL LLP**
                                               184 Atlantic Street
                                               Stamford, Connecticut 06901
                                               Telephone: (203) 325-4491
                                               Facsimile: (203) 325-3769
                                               smcelligott@sgtlaw.com
                                               rsilver@sgtlaw.com
                                               sbloch@sgtlaw.com
                                               isloss@sgtlaw.com
                                               zrynar@sgtlaw.com

                                               Joseph P. Guglielmo (BBO# 671410)
                                               Erin G. Comite (*pro hac vice* forthcoming)
                                               Alex Outwater (*pro hac vice* forthcoming)
                                               **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                               The Helmsley Building
                                               230 Park Avenue, 17th Floor
                                               New York, NY 10169
                                               Telephone: (212) 223-6444
                                               Facsimile: (212) 223-6334
                                               jguglielmo@scott-scott.com
                                               ecomite@scott-scott.com

46